## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JAMES S. DUFFY**

     **Plaintiff**

  v.

**MICHAEL A. GEORGE**, *et al.*

     **Defendants**

**CIVIL ACTION
NO. 14-02111**

**PAPPERT, J.**                   **December 23, 2015**

### MEMORANDUM

  Plaintiff James Duffy ("Duffy") filed this lawsuit against Defendants John Lott ("Lott"), Sheila Gantz ("Gantz"), Bear Mountain Realty, Edward Puhl ("Puhl"), Richard E. Thrasher ("Thrasher"), Joseph Miller and the Estate of Catherine Miller (collectively the "Litigants"), and Adams County Common Pleas Court Judge Michael A. George ("Judge George") and United States District Judge Yvette Kane ("Judge Kane"). Duffy complains of actions taken by the Defendants in a prior state court ejectment proceeding over which Judge George presided, and in which the Litigants sought to eject Duffy from his property. In the course of that litigation, Duffy removed the action to federal court. Judge Kane was assigned the case. She found that the court did not have subject-matter jurisdiction over the action and remanded the case to state court. Duffy was ejected from his property after additional proceedings in state court before Judge George.

  Although Duffy's *pro se* Amended Complaint airs a number of grievances he has with Judge George and the Litigants stemming from the ejectment action, at the heart of Duffy's complaint is an allegation that Judge Kane's remand order was defective because it did not direct the clerk of court to send a certified copy of the order to the state court consistent with 28 U.S.C.

1

§ 1447(c). According to Duffy, all parties were aware of this alleged defect yet proceeded in state court, which ultimately resulted in his ejectment from the property at issue. Based on this, Duffy asserts claims against the Defendants for violation of his constitutional rights, conspiracy, theft/conversion, and intentional infliction of emotional distress. All Defendants filed motions to dismiss Duffy's Amended Complaint. (ECF Nos. 31, 36, 40, 59.) The Court grants their motions.

## I.

This dispute dates back to a February 2012 ejectment action brought by Lott and Gantz, trading as Bear Mountain Realty, against Duffy.[1] (Am. Compl. ¶¶ 2, 5, 6, 7; *Lott v. Duffy*, 579 F. App'x 87, 88 (3d Cir. 2014).) In November of 2012, the parties reached a settlement of the claims against Duffy, which provided in part that Duffy would vacate the property within 90 days and that he would release any claim, interest, or title to the property. *Lott*, 579 F. App'x at 88. Duffy, however, remained on the property. On February 6, 2013, he filed a petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania, which provided him with an automatic stay of all claims pending against his estate, including Lott and Gantz's ejectment action. (Am. Compl. ¶ 23, 24; *Lott*, 579 F. App'x at 88.) In May 2013, the Bankruptcy Court granted Lott and Gantz's motion to lift the automatic stay and allowed the ejectment action against Duffy to proceed. (Am. Compl. ¶ 38; *Lott*, 579 F. App'x at 88.)

---

[1] At times, the Amended Complaint's chronology of events is unclear. To assist in its understanding and discussion of the facts, the Court relies in part on the recitation of the underlying facts of this case provided by the United States District Court for the Middle District of Pennsylvania in its November 2013 decision dismissing Duffy's removal to federal court, and the Third Circuit Court of Appeals' opinion affirming that decision. *See Lott v. Duffy*, No. 1:13-CV-02768, 2013 WL 6058229 (M.D. Pa. Nov. 14, 2013) *aff'd in part, appeal dismissed in part*, 579 F. App'x 87 (3d Cir. 2014); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider documents in the public record in deciding a motion to dismiss) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004)).

2

Lott and Gantz then initiated contempt proceedings against Duffy in state court for failure to vacate the property. *Lott*, 579 F. App'x at 88. On June 7, 2013, the state court scheduled a hearing on the motion for contempt. *Id.* In response, Duffy removed the action to the District Court for the Middle District of Pennsylvania. (Am. Compl. ¶ 44.) Duffy contended that because he had not received proper notice of the contempt action and/or lifting of the automatic stay, the ejectment action presented a federal question of procedural due process under the Fourteenth Amendment. (Am. Compl. ¶¶ 38–43; *Lott*, 579 F. App'x at 88.) Lott and Gantz filed a motion to remand, arguing that the Notice of Removal was filed more than 30 days after service of the initial pleading in the ejectment action and that it was defective because there was no basis for federal jurisdiction. *Lott*, 579 F. App'x at 88.

On October 30, 2013, Judge Kane remanded the case to the Adams County Court of Common Pleas on the grounds that the ejectment action presented no federal question and the Court therefore lacked subject-matter jurisdiction. (Am. Compl. ¶ 47; *Lott*, 579 F. App'x at 88.) Duffy alleges that the remand order was procedurally deficient because Judge Kane, "in violation of law and court rules, did not direct or otherwise cause the District Clerk to send 'a certified copy of the order of remand' to the state prothonotary, but simply directed the Clerk to mark the case 'closed'." (Am. Compl. ¶ 48.)

On November 1, 2013, Judge George, presiding over Duffy's ejectment action in state court, issued an order for a hearing on the motion for contempt to be held on November 7, 2013. (Am. Compl. ¶ 50.) The order stated that Duffy's failure to appear "would result in a warrant being issued for his arrest." (*Id.* ¶ 51.) Despite that, Duffy "did not attend the November 7, 2013 hearing because [he] knew a 'key jurisdictional event' had not yet occurred; and, as a consequence, neither[] defendant [n]or the state had jurisdiction to act, unless plaintiff appeared."

3

(*Id.* ¶ 52.)  After Duffy failed to appear at the November 7, 2013 hearing, Judge George issued an order stating that another hearing would be held on November 13, 2013 where Duffy would be ordered to show cause why he should not be held in contempt, and that "should he fail to appear as directed, a bench warrant for his arrest shall issue." (*Id.* ¶ 54.)  Duffy maintains that because the remand order did not order the clerk to send a certified copy of the order to the state prothonotary, Judge George was "acting with a total lack of jurisdiction." (*Id.* ¶ 55.)

On November 13, 2013, prior to the show cause hearing, Duffy filed a second Notice of Removal in federal court. (*Id.* ¶ 59.)  He alleged equal protection and due process violations because of an "imminent threat of arrest and loss of property." *Lott*, 579 F. App'x at 88 (internal quotation marks omitted).  Additionally, he alleged that Judge George "was forcibly attempting to single [him] out, in an invidiously discriminatory act, in deprivation of [his] constitutional rights, absent jurisdiction." (Am. Compl. ¶ 61.)  Lott and Gantz moved to dismiss the Notice of Removal on the grounds that Duffy cannot remove the same pending action that the district court already remanded. *Lott v. Duffy*, No. 1:13-CV-02768, 2013 WL 6058229, at *1 (M.D. Pa. Nov. 14, 2013).  On November 14, 2013, Judge Kane issued an order granting the motion to dismiss in part, remanding the case, and awarding attorneys' fees against Duffy. (Am. Compl. ¶ 65; *Lott*, 579 F. App'x at 89.)  Duffy alleges that: (1) Lott and Gantz never notified him of their intent to file a motion to dismiss "in violation of [the] court's local rules"; and (2) Judge Kane granted Lott and Gantz's motion "in blatant violation of his 14th Amendment rights, substantively and procedurally." (Am. Compl. ¶¶ 64–66.)  Duffy later appealed that decision to the Third Circuit, which held that the remand order was not appealable and the award of attorneys' fees was not an abuse of discretion. *Lott*, 579 F. App'x at 90.

On November 15, 2013, further to an order from Judge George, four Adams County sheriff deputies arrived at Duffy's house "and proceeded to forcibly seize and evict [Duffy] and his daughter from their home." (Am. Compl. ¶ 67.)  On November 19, 2013, Duffy, who was at that time unaware of Judge Kane's November 14, 2013 order granting Lott and Gantz's motion to dismiss and remanding the case back to state court, filed in district court an "emergency motion to return the parties to status quo." (*Id.* ¶ 72.)  In that motion, Duffy stated that: (1) a certified copy of remand from Duffy's first removal had not been received by the state court; and (2) he had filed a second removal on November 13, 2013. (*Id.* ¶ 73.)  On November 21, 2013, Judge Kane denied Duffy's motion. (*Id.* ¶ 75.)

On November 4, 2014, Duffy filed this action in the District Court for the Middle District of Pennsylvania. (ECF No. 1.)  His Amended Complaint alleges that: (1) Defendants illegally seized his property in violation of the First, Fourth and Fourteenth Amendments; (2) Judge George deprived him of his due process rights in violation of the Fifth and Fourteenth Amendments, and retaliated against him in violation of the First Amendment; (3) Judge Kane and the Litigants deprived him of his due process rights in violation of the First, Fifth and Fourteenth Amendments; (4) Judge Kane deprived him of his right to due process and access to the courts in violation of the Fifth and First Amendments; (5) all Defendants conspired to deprive him of federal and state rights; (6) the Litigants committed theft/conversion of his property; and (7) the Litigants committed intentional infliction of emotional distress. (Am. Compl. ¶¶ 78–116.)  He included as defendants attorneys Thrasher and Puhl for their roles in representing Lott, among others, during the course of the state court proceedings, and for their role "in furtherance of a concerted scheme to deprive [him], *inter alia*, of his constitutional right to due process in abrogation of his property interests." (*Id.* ¶¶ 8–9.)

5

On June 4, 2015, pursuant to 28 U.S.C. § 292(b), Duffy's lawsuit was transferred and reassigned to this Court. (ECF No. 34.) Defendants filed four separate motions to dismiss the Amended Complaint: (1) Lott, Gantz, Bear Mountain Realty, Thrasher, Miller and the Estate of Catherine M. Miller (ECF No. 31); (2) Judge George (ECF No. 36); (3) Puhl (ECF No. 40); and (4) Judge Kane (ECF No. 59). Judge Kane and Judge George both contend that they have judicial immunity and cannot be subject to liability for any of Duffy's claims. (ECF Nos. 36, 59.) The Litigants contend that the claims against them should be dismissed because there is a lack of federal question and diversity jurisdiction, Duffy's claims are barred by the *Rooker-Feldman* doctrine, and in any event, Duffy fails to state a claim on which relief can be granted. (*See generally* ECF Nos. 31, 40.) Duffy opposed each of those motions. (ECF Nos. 39, 51, 53, 64.)

## II.

Judges George and Kane invoke the protection of sovereign immunity under the Eleventh Amendment. The assertion that Duffy's claims are barred by sovereign immunity is a facial attack on jurisdiction as opposed to a factual attack, and the Court therefore accepts the allegations in the complaint as true and utilizes the standard for dismissal under Rule 12(b)(6). *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–59 (3d Cir. 2014). Under that Rule, the "mere possibility of misconduct" is not enough; rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim has facial plausibility if it has sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, while all allegations contained in the complaint must be

6

accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Id.* at 678. A motion to dismiss will be granted if the factual allegations in the complaint are not sufficient "to raise the right of relief above the speculative level." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).

The Court must liberally construe a *pro se* litigant's pleadings. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir.2011). "This means that we are willing to apply the relevant legal principle even when the complaint has failed to name it." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). However, when evaluating a *pro se* complaint, the Court must still "ensure that it has 'sufficient factual matter[,] accepted as true[,] to state a claim to relief that is plausible on [its] face.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

### A.

A judicial officer has absolute immunity from suit in the performance of his or her duties. *Moncrief v. Chase Manhattan Mortgage Corp.*, 275 F. App'x 149, 154 (3d Cir. 2008) (citing *Mireles v. Waco*, 502 U.S. 9, 12 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (internal citation and quotation omitted); *see Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 772 (3d Cir. 2000) ("[J]udicial immunity is not forfeited by allegations of 'malice or corruption of motive.'"). In *Stump*, the Supreme Court of the United States provided guidance on what it means for a judge to act in "clear absence of jurisdiction:"

7

> [I]f a probate judge, with jurisdiction over only wills and estates,
> should try a criminal case, he would be acting in the clear absence
> of jurisdiction and would not be immune from liability for his
> action; on the other hand, if a judge of a criminal court should
> convict a defendant of a nonexistent crime, he would merely be
> acting in excess of his jurisdiction and would be immune.

435 U.S. at 357 n.7. Additionally, the scope of a judge's jurisdiction "must be construed broadly where the issue is the immunity of the judge." *Id.* at 356.

Duffy alleges that because Judge Kane's remand order did not provide the proper instruction to the clerk of court, the action remained pending in the federal court and the state court was without jurisdiction to issue orders in the ejectment action.[2] (Am. Compl. ¶¶ 78–84.) He bases this argument on the language of 28 U.S.C. § 1447(c), which states that "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The state court may thereupon proceed with such case." In support of his position, Duffy relies on language from *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995): "the physical mailing of the certified copy is the key jurisdictional event to divest the district court of jurisdiction, because a remand order is not self-executing." Thus, according to Duffy, Judge Kane's October 13, 2013 remand order was deficient, and the state court never had jurisdiction at any point after that.[3] (*See, e.g.,* Am. Compl. ¶ 48.)

The failure of Judge Kane to include in the order that the clerk of court send a certified copy to the state court, and the subsequent actions taken by Judge George, do not amount to acts in "clear absence of jurisdiction." If anything, those actions may amount to acts *in excess of*

---

[2]     Duffy is suing Judge Kane in her individual capacity pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and is suing Judge George in his individual capacity pursuant to 42 U.S.C. § 1983.

[3]     In his appeal to the Third Circuit after the district court remanded his lawsuit back to state court for a second time, Duffy similarly argued that Judge Kane's first remand order was deficient because a certified copy was not sent to the state court. *Lott*, 579 F. App'x at 89 n.1. The Third Circuit however did not rule on the merits of this argument at that time because "Duffy did not timely appeal this order, *see* Fed. R. App. Pro. 4(a)(1)(A) (providing for 30 days in which to appeal), and, accordingly, we lack jurisdiction to review it[.]" *Id.* (internal citations omitted).

jurisdiction, which judicial immunity protects. *See Gallas*, 211 F.3d at 769. In *Classic Distributors, Inc. v. Zimmerman*, 387 F.Supp. 829, 835 (M.D. Pa. 1974), the district court held that judicial immunity applied to a state judge who retained jurisdiction even after the lawsuit was removed to federal court because he was not acting in clear absence of jurisdiction. This "was at worst an act in excess of his jurisdiction; the removal did not alter the fact that the subject matter of the case was initially within the jurisdiction of the state court." *Id.* A judge acts in "clear absence of jurisdiction" when "it would be inherently impossible for a court to take jurisdiction," such as the case of a probate court judge with authority only over wills and estates asserting jurisdiction over a criminal case. *Id.*

Far from that situation, Duffy's assertion of wrongdoing rests on the failure of Judge Kane and Judge George to comply with a procedural technicality in § 1447(c) to ensure that a certified copy of the remand order was sent to the state court. However, there is no question that the case was "initially within the jurisdiction of the state court," *id.*, and that Judge Kane found the district court did not have subject-matter jurisdiction because there was no federal question. (Am. Compl. ¶ 47; *Lott*, 579 F. App'x at 88.) Although it may have been technically proper to order the clerk of court to mail a certified copy of the order to the state court, failing to do so was not an act in "clear absence of jurisdiction."[4] *See Gallas*, 211 F.3d at 769 (finding court acted in excess of jurisdiction but not in clear absence of jurisdiction when accepting as true allegation

---

[4]     Duffy incorrectly relies on *Trans Penn* for the proposition that a remand order must be certified pursuant to § 1447(c). The issue before the Third Circuit in *Trans Penn*, however, was not whether a remand order must be certified in order to divest the district court of jurisdiction. Rather, the question was whether a district court had jurisdiction to reconsider its decision to remand after it entered an order remanding the case but before the order was physically mailed to the state court. 50 F.3d at 225. The Third Circuit did, however, address the certification question in *Conklin v. Kane*, No. 14-4106, 2015 WL 8125304 (3d Cir. Dec. 8, 2015), where it held that an order need not be certified as long as the surrounding circumstances of the remand are in "sufficient compliance" with § 1447(c). Thus, Duffy is incorrect in arguing that Judge Kane's remand order needed to be certified in order to divest the district court of jurisdiction. The Court, however, need not determine whether Judge Kane's order "sufficiently complied" with the requirements of § 1447(c) since it is clear that Judges Kane and George are protected by judicial immunity.

that judge made a procedural error) ("Immunity will not be forfeited because a judge has committed 'grave procedural errors.'") (citing *Stump*, 435 U.S. at 359).

### III.

The Litigants argue that Duffy's claims against them are barred by the *Rooker-Feldman* doctrine. (*See* Mem. in Supp. of Lott, *et al.* Mot. Dismiss, ECF No. 32; Mem. in Supp. of Puhl Mot. Dismiss, ECF No. 41.) This jurisdictional doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Specifically, the Litigants contend that Duffy "had his appeal in state court. He cannot now seek further appellate review in this Court." (ECF Nos. 32, 41.)

The Third Circuit examined the scope and application of the *Rooker-Feldman* doctrine in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, et al., 615 F.3d 159 (2010). In that case, Great Western alleged that numerous attorneys and certain members of the state judiciary engaged in a conspiracy to rule against it in an arbitration and Great Western's subsequent appeal in state court to vacate the arbitration award. *Id.* The Third Circuit held that the *Rooker-Feldman* doctrine did not bar Great Western's § 1983 action against defendants in federal court. In reaching that conclusion, however, the Third Circuit first surveyed the development and application of the doctrine in the Supreme Court and various Circuit Courts of Appeals. It began the analysis by noting that the doctrine as articulated in the founding cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "established the principle that federal district courts lack jurisdiction over suits that

are essentially appeals from state-court judgments, but they offered little instruction on how to apply that principle."

Based on the Supreme Court's decision in *Exxon Mobil*, which refined the application and limited the scope of the *Rooker-Feldman* doctrine, the Third Circuit in *Great Western* articulated four requirements that must be met in order for the doctrine to bar a claim: (1) the federal plaintiff must have lost in state court; (2) the plaintiff must complain of injuries that were caused by the state court judgment; (3) the state court judgment in question must have been rendered before the federal suit was filed; and (4) the plaintiff must be inviting the district court to review and reject the state court judgment. *Great Western Mining*, 615 F.3d at 166 (citing *Exxon Mobil*, 544 U.S. at 284). "The second and fourth requirements are the key to determining whether a federal suit presents and independent, non-barred claim." *Id.*

As an initial matter, there is no dispute that Duffy lost in state court and that the state court judgment was rendered before this federal suit was filed. (Am. Compl. ¶ 53–77.) Thus, the critical issues in determining if Duffy's lawsuit is barred are the second and fourth requirements: is Duffy complaining of injuries caused by Judge George's order; and is Duffy inviting the Court to review and reject that judgment. *Great Western Mining*, 615 F.3d at 166 (citing *Exxon Mobil*, 544 U.S. at 284). If the answer to both of those questions is yes, then Duffy's claims are barred by the *Rooker-Feldman* doctrine.

In discussing the scope of the second requirement, the Third Circuit addressed the difference between a situation where the plaintiff is complaining about the state court judgment itself and a situation where the plaintiff is complaining about the defendant's actions, which caused an adverse state court judgment: "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal

court to deny a legal conclusion reached by the state court[.]" *Id.* at 167. Thus, the "critical task" of the court is to identify when a plaintiff is complaining about a third-party's actions—which would not be barred by the doctrine—compared to a complaint about the state court judgment. *Id.* The Third Circuit recognized that "[a]lthough the test is seemingly straightforward, application becomes more complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding." *Id.*

To explain the second requirement and illustrate the distinction between a plaintiff complaining about a state court judgment as opposed to a third-party's actions, the Third Circuit highlighted the Sixth Circuit Court of Appeals opinion in *McCormick v. Braverman*, 451 F.3d 382, 384 (6th Cir. 2006). *Id.* at 167–68. In *McCormick*, plaintiff filed suit in federal court alleging that defendants engaged in fraud and misrepresentation in state-court divorce proceedings involving certain real property. *Id.* at 167 (citing *McCormick*, 451 F.3d at 388). The Sixth Circuit held that the *Rooker-Feldman* doctrine barred some, but not all, of plaintiff's claims. *Id.* The non-barred claims that the court allowed to proceed were allegations that: (1) defendants committed fraud and misrepresentation in the state court divorce proceedings; (2) defendants intentionally chose not to make plaintiff a party in the litigation concerning the receivership of the real property at issue; and (3) defendants committed an abuse of process in the divorce proceedings. *Id.* at 167–68. These claims were not barred by *Rooker-Feldman* because they were all "*independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means . . . ." *Id.* at 169 (emphasis in original) (internal citations and quotation marks omitted). The Sixth Circuit held, however, that *Rooker-Feldman* barred plaintiff's claim that the state court's order of receivership was illegal because that claim "sought review of that order." *Id.* Thus, the critical task in

analyzing whether the plaintiff is complaining of the state court judgment is to determine if the "source" of the alleged injury is something other than the judgment itself. *See id* at 167–68 (citing *Fieger v. Ferry*, 471 F.3d 637, 639 (6th Cir. 2006)).

Against that backdrop, the Third Circuit held that the *Rooker-Feldman* doctrine did not bar Great Western's § 1983 claims alleging a conspiracy among defendants to "engineer Great Western's defeat in state court." *Id.* at 171. In addition to the reasoning articulated in the precedent it surveyed, the Third Circuit relied on a factually similar case, *Nesses v. Shephard*, 68 F.3d 1003 (7th Cir. 1995). In that case, the Seventh Circuit held that the plaintiff's claims were not barred by *Rooker-Feldman* because he was "not merely claiming that the decision of the state court was incorrect," but instead that *"people involved in the decision violated some independent right of his,* such as the right . . . to be judged by a tribunal that is uncontaminated by politics . . . ." *Id.* (citing *Nesses*, 68 F.3d at 1005) (emphasis in original). Like the Seventh Circuit in *Nesses*, the Third Circuit held that Great Western was alleging a conspiracy between the defendants to rule against it in state court. And "like Nesses, Great Western is not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, Great Western claims that people involved in the decision violated some independent right, that is, the right to an impartial forum." *Id.* at 172 (citing *Nesses*, 68 F.3d at 1005). Thus, the second requirement that plaintiff is complaining of injuries caused by a state court judgment was not present, and the *Rooker-Feldman* doctrine did not bar plaintiff's claims from proceeding in federal court.

Here, Duffy is alleging against the Litigants: (1) deprivation of his rights to due process in violation of the First, Fifth, and Fourteenth Amendments; (2) civil conspiracy; (3) theft/conversion; and (4) intentional infliction of emotional distress. (*See generally* Am.

13

Compl.)  Specifically, he contends that they "knowingly exploited the benefit of defendant

George's unlawful orders that ultimately resulted in the unlawful seizure of plaintiff and his

daughter, and dispossession of plaintiff's property." (*Id.* at ¶ 93.)  Regardless of whether those

claims are sufficient to survive a motion for failure to state a claim—which is discussed *infra*—

they are "separate constitutional violation[s] which caused the adverse state court decision and

the injury to" Duffy.  *Great Western*, 615 F.3d at 172–73 (citing *Brokaw v. Weaver*, 305 F.3d 660,

662 (7th Cir. 2002) (internal quotation marks omitted)).  Thus, like the plaintiff in *Great Western*,

Duffy is complaining of injuries independent of the state court judgment.  He is not contending

that the ejectment from his home is the source of his injury; rather, he is alleging that the

Litigants' actions are—that is, they engaged in conduct that amounted to, among other things, a

civil conspiracy and a deprivation of his constitutional rights.  Since Judge George's judgment

was not the cause of Duffy's injuries, the second requirement is not met and the *Rooker-Feldman*

doctrine does not deprive the Court of jurisdiction over his claims.  *See Great Western*, 615 F.3d

at 173.

    A finding that the Litigants' actions and not the state court judgment were the source of

Duffy's alleged injuries is sufficient to make *Rooker-Feldman* inapplicable.  Even if this

requirement was met, however, Duffy is not seeking a review and rejection of that judgment—

the fourth requirement in the Third Circuit's *Rooker-Feldman* test.[5]  The fourth requirement

"targets [ ] whether the plaintiff's claims will require appellate review of state-court decisions by

the district court."  *Id.* at 169.  Such "[p]rohibited appellate review" exists when a plaintiff seeks

"a review of the proceedings already conducted by the 'lower' tribunal to determine whether it

---

[5]    The Third Circuit in *Great Western* similarly analyzed whether the plaintiff was seeking review and rejection of a state court judgment even though it already held that the state court judgment was not the source of the plaintiff's injury: "Nevertheless, it is worthwhile to discuss the other key requirement—whether Great Western seeks review and rejection of the state-court judgments."  615 F.3d at 173.

reached its result in accordance with law." *Id.* (citing *Bolden v. City of Topeka, Ks.*, 441 F.3d

1129, 1143 (10th Cir. 2006)). In discussing this requirement, the Third Circuit noted that it is

"closely related" to the second requirement that the plaintiff is complaining of injuries caused by

the state court judgment. *Id.* at 168. However, it is not necessarily the case that "a federal

plaintiff who was injured by a state-court judgment is . . . seeking review and rejection of that

judgment." *Id.* In other words, it is possible that a plaintiff is not seeking a rejection of the state

court judgment, and thus not barred by the *Rooker-Feldman* doctrine, even though the source of

his injury is the state court judgment itself. *Id.* (discussing *Atkins v. Rumsfeld*, 464 F.3d 456, 460

(4th Cir. 2006)).

   The Third Circuit in *Great Western* opined that there is a difference between asking the

district court to undo a state court judgment and asking the district court to find that a state court

judgment was entered erroneously as a result of defendants' actions. *See id.* ("A finding by the

District Court that state-court decisions were erroneous and thus injured Great Western would

not result in overruling the judgments of the Pennsylvania courts.") (citing *Nesses*, 68 F.3d at

1005). Here, Duffy is not asking the Court to declare the state court judgment null and void.

Rather, he seeks monetary damages for the injuries that the alleged actions of the Litigants

caused him.[6] (Am. Compl. ¶¶ 78–118.) Although Duffy's claim may involve a review of a state

court judgment and perhaps even a conclusion that it was erroneous, it would not involve

undoing the ejectment of Duffy from the property or otherwise overturning the judgment. *See*

*Great Western*, 615 F.3d at 173. "Accordingly, the review and rejection requirement of the

*Rooker-Feldman* doctrine is not met," and the Court may properly exercise jurisdiction over

Duffy's lawsuit. *Id.*

---

[6]  Duffy asks for "all manner of relief consistent with the foregoing claims, including, but not limited to monetary award . . . ." (Am. Compl. ¶ 118.)

## IV.

Since the Court has jurisdiction over Duffy's lawsuit, it may consider whether his complaint states a claim pursuant to Rule 12(b)(6).[7] The Litigants argue that Duffy's complaint fails to state a claim for two reasons: (1) the complaint's allegations are conclusory statements without supporting facts; and (2) Duffy's § 1983 claims against them cannot proceed because they are not state actors. (Mem. in Supp. of Lott, *et al.* Mot. Dismiss at 5, ECF No. 32.) Although the Litigants are incorrect in stating that Duffy cannot bring a § 1983 claim against them because they are private actors,[8] they rightly argue that he has not alleged sufficient facts to do so.

To survive a motion to dismiss for failure to state a claim, Duffy must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79 (quotation omitted). The court must construe the complaint in the light most favorable to Duffy. *In re Ins. Brokerage Antitrust Litig.*,

---

[7]      Generally, courts undertake a preclusion analysis upon a finding that the *Rooker-Feldman* doctrine does not apply. *See Exxon Mobil*, 544 U.S. at 293. The Litigants, however, has not raised claim preclusion or issue preclusion in their motions to dismiss and it is not necessary for the Court to raise those *sua sponte* since "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing Fed. R. Civ. P. 8(c) (listing res judicata as an affirmative defense)); *see Huber v. Taylor*, 532 F.3d 237, 249 (3d Cir.2008) (court must *sua sponte* determine subject-matter jurisdiction). The Court will therefore not undertake a preclusion analysis at this time. *See Western Mining*, 615 F.3d at 173 (declining to address preclusive effect of state court judgments because parties did not brief the issue); *Nevada First Fed., LLC v. Macciocca*, No. 15-1304, 2015 WL 4461828, at *4 (E.D. Pa. July 21, 2015) ("Since Defendants did not raise preclusion arguments, the Court will not address them at this time.").

[8]      The Court recognizes the well-founded principle that attorneys are not "state actors" solely because they are attorneys. *Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981); *see also Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980) (per curiam). The Court, however, liberally construes Duffy's *pro se* Amended Complaint to attempt to allege a conspiracy against attorneys Thrasher and Puhl, in addition to the other Litigants, to the extent that they performed acts beyond their "traditional functions" and engaged in a conspiracy to violate Duffy's constitutional rights. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir.1999) (citations omitted).

618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d

187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be

accepted as true, the court need not give credence to mere "legal conclusions" couched as facts.

*Iqbal*, 556 U.S. at 678.

The Supreme Court has held that "[p]rivate parties who corruptly conspire with a judge in

connection with [an official judicial act] are . . . acting under color of state law within the

meaning of § 1983." *Dennis v. Sparks*, 449 U.S. 24, 29 (1980); *see also Lugar v. Edmondson

Oil Co.*, 457 U.S. 922, 941 ("[A] private party's joint participation with state officials in the

seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes

of the Fourteenth Amendment."). Duffy alleges that the Litigants deprived him of his

constitutional rights pursuant to § 1983. In order to state such a claim, Duffy's Amended

Complaint must adequately plead the existence of a conspiracy between the Litigants and the

members of the judiciary. *See Great Western*, 615 F.3d at 176.

"A conspiracy is not parallel conduct by different parties; it must embody, at its heart, an

agreement between the defendants and state officials—a 'meeting of the minds'—to violate the

plaintiff's rights." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa.) *aff'd*, 572 F. App'x 68

(3d Cir. 2014) (internal quotation marks and citations omitted). The law is clear that the plaintiff

must plead more than legal conclusions of the existence of a conspiracy or agreement. *Id.*

Rather, Duffy "must assert facts from which a conspiratorial agreement can be inferred." *D.R. v.

Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir.1992); *see also Startzell

v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir.2008) (stating that a conspiracy requires a

"meeting of the minds") (citation omitted). The Supreme Court has held that "merely resorting

17

to the courts and being on the winning side of a lawsuit does not make [the winning] party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28.

According to the Amended Complaint, the primary source of Duffy's injury is the failure of Judge Kane to ensure that a certified copy of her remand order was sent to the state court in accordance with § 1447(c).[9] As a result of that allegedly flawed order, Duffy contends that Judge George issued orders without proper jurisdiction and that the Litigants complied with those orders despite knowing about this procedural defect. The Litigants "knowingly exploited the benefit of George's unlawful orders that ultimately resulted in the unlawful seizure of plaintiff and his daughter, and the dispossession of plaintiff's property." (Am. Compl. ¶ 93.) Specifically, Duffy alleges that the Litigants did so by "downloading" Judge Kane's remand order and attaching it "as an exhibit in litigation" despite knowing that it needed to be certified. (*Id.* ¶ 94.)

Duffy's Amended Complaint is devoid of any specific facts giving rise to an inference that the Litigants engaged in a conspiracy to deprive Duffy of his constitutional rights. He contends that the Litigants "conspired to deprive plaintiff of any interest in his property" and that Defendants Thrasher and Puhl acted "in furtherance of a concerted scheme to deprive plaintiff . . . of his constitutional right to due process." (Am. Compl. ¶¶ 8–9, 106–14.) These are conclusory statements which are insufficient to state any claim for conspiracy. *See Great Western*, 615 F.3d at 178 ("[W]e do not consider any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between the Defendants and

---

[9]     Duffy includes in his Amended Complaint other instances where he claims he was not provided with notice or service as required by the Federal Rules of Civil Procedure. For example, he claims that "Defendant Thrasher, in violation of this court's local rules, did not notice plaintiff of his intent to file a motion to dismiss, nor did plaintiff have knowledge of its filing until a week later." (Am. Compl. ¶ 64.) These ancillary procedural issues, however, do not amount to prejudice rising to the level of a constitutional deprivation. The Court therefore will focus on Duffy's claim that Judge Kane's remand order needed to be certified.

the Philadelphia judicial system.'"). The most specific factual allegation that Duffy makes is that certain Litigants "acted intentionally to subvert plaintiff's rights when they employed a downloaded a [sic] unauthenticated copy of defendant Kane's uncertified close the case remand order, while knowing it was not the 'certified copy,' as required by law." (Am. Compl. ¶ 114; *see also id.* ¶ 94.) That allegation, however, is not sufficient to show a "meeting of the minds" with either Judge George or Judge Kane. To the contrary, it demonstrates that the Litigants followed a remand order that may have "sufficient[ly] compli[ed] with the certification requirement." *Kane*, 2015 WL 8125304, at *3 (citing *Estelle*, 625 F.2d at 78 (finding a remand order issued from the bench in open court, coupled with a back-dated order, to be in sufficient compliance with § 1447(c) because "substance must control form").

Absent a scheme with the judges to deprive Duffy of his rights, complying with a judge's order—even if it the order does not conform in all respects with the technical requirements of the Federal Rules—is not sufficient to demonstrate that the Litigants engaged in a conspiracy. Without any conspiracy, Duffy is left with an allegation that the Litigants, in essence, deprived him of his constitutional rights and committed theft/conversion for following Judge Kane's remand order and subsequently emerging victorious in state court. That is not a basis for liability, and Duffy's claims against the Litigants are dismissed.

## V.

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir.2007); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief

could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). This analysis involves "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008).

Allowing Duffy leave to amend would be futile. It is apparent from the allegations in his Amended Complaint that Judge George and Judge Kane are entitled to judicial immunity. They did not act in clear absence of all jurisdiction and there are no additional facts that may be alleged to sustain a claim against them. Similarly, he cannot sustain a § 1983 claim against the Litigants. In order to do so, he must allege a conspiracy with Judge Kane or Judge George, which he cannot do. His claim that the Litigants are "state actors" because they knowingly followed a defective order, and therefore conspired to deprive him of his constitutional rights, fails as a matter of law.

For these reasons, Duffy's Amended Complaint is dismissed. An appropriate Order follows.

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.